IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 09-cv-00019-MSK-MEH

UNITED STATES OF AMERICA,

        Plaintiff,

v.

CEMEX, INC.,

        Defendant.

_____

**OPINION AND ORDER DENYING MOTION TO DISMISS**
_____

**THIS MATTER** comes before the Court pursuant to Defendant Cemex, Inc.'s ("Cemex") Motion to Dismiss First and Second Claims for Relief **(#19)**, the United States' response **(#38)**, and Cemex's reply **(#45)**.

## FACTS

The parties' filings explain in detail a complex regulatory environment and baffling array of abbreviations and acronyms, but for purposes of this motion, the underlying facts alleged in the Amended Complaint **(# 16)** can be simply stated.

Cemex operates a cement manufacturing plant in Lyons, Colorado. Between 1997 and 1999, Cemex undertook modifications to that plant. The United States contends that Cemex failed to notify the U.S. Environmental Protection Agency ("EPA") of the modifications. When the modifications were complete and the plant returned to operation, it began emitting pollutants at an increased rate. The EPA contends that it did not learn of the modifications – and thus, the

ensuing increase in pollutants – until 2006. The U.S. then commenced this action in January 2009, asserting a number of claims.

The instant motion addresses the first two claims in the Amended Complaint.[1] Those claims contend that Cemex violated the Clean Air Act by filing to obtain appropriate pre-construction permits before undertaking the modifications, and thereafter, failed to obtain and comply with a proper operating permit under Title V of the Clean Air Act. The United States seeks both civil penalties for these violations pursuant to 42 U.S.C. § 7413(b), as well as injunctive relief. Cemex contends that these claims are barred by an applicable statute of limitation to the extent monetary penalties are requested, and barred by the doctrine of laches to the extent equitable relief is requested.

## ANALYSIS

### A. Standard of review

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pled allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001), *quoting Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999). The Complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Benefield v. McDowall,* 241 F.3d 1267, 1270 (10th Cir. 2001); *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). The Court must limit its review to the four corners of

---

[1] The Court does not address the remaining claims.

the Complaint, but may also consider documents attached to the Complaint as exhibits, *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001), as well as unattached documents which are referred to in the Complaint and central to the plaintiff's claim, so long as the authenticity of such documents is undisputed. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

Because the motion to dismiss is predicated on the running of a statute of limitation, Cemex bears the initial burden of demonstrating that, on the face of the Amended Complaint, the statute has run. *Aldrich v. McCulloch Properties, Inc.*, 627 F.2d 1036, 1041 n. 4 (10th Cir. 1980). The burden then shifts to the United States to establish a factual basis for tolling of the statute. *Id.*

When a claim for relief requests equitable relief – such as the United States' request for injunctive relief – the doctrine of laches determines whether the claim is timely. *Garner v. Yellow Freight System, Inc.,* 19 Fed.Appx. 834, 836 & n. 2 (10th Cir. 2001) (unpublished), *citing Jicarilla Apache Tribe v. Andrus*, 687 F.2d 1324, 1337 (10th Cir.1982). The party invoking the doctrine is required to show: (i) unreasonable delay in bringing suit by the person against whom the defense is asserted, and (ii) prejudice to the party asserting the defense as a result of such delay. *Id.*

### B. Brief overview of regulatory environment

To fully appreciate the issues in this case, it is necessary to have some familiarity with the statutory and regulatory framework that animates the Clean Air Act. The parties have discussed that framework at length in the Amended Complaint and their briefing, but the Court finds that a simplified explanation is sufficient to place the issues presented here in the proper

context.

The Clean Air Act's goals are accomplished through a partnership of federal authorities, led by the EPA, and state regulatory agencies. The EPA sets air concentration limits for various pollutants, and each state is charged with developing an regulatory plan to meet those standards. *See generally National Parks Conservation Ass'n. v. Tennessee Valley Authority*, 480 F.3d 410, 412-13 (6th Cir. 2007) ("*TVA I*") (discussing statutory and regulatory framework). When a polluter wishes to construct or modify a facility that will produce regulated pollutants, it must obtain a state-issued "pre-construction permit" – either a "Prevention of Significant Deterioration" ("PSD") permit, or a "Non-attainment New Source Review" ("NNSR") permit.[2] *Id.* at 412-13 & n. 1. During the PSD permitting process, state authorities examine EPA limitations on the applicable pollutants, determine and direct the use of best-available technology to limit emissions, and provide for ongoing monitoring of the facility. *Id.* The Act contemplates that, following construction, polluters will apply for and obtain a state-issued and state-supervised "Title V" permit, sometimes referred to as an "operating permit." 42 U.S.C. § 7661a(a).

---

[2]A PSD permit is required for a modification that will affect a facility's output of a specific pollutant for which the surrounding area has attained compliance with EPA-established limitations (*i.e.* an "attainment area") for ambient air concentrations of that pollutant. An NNSR permit is required if the modification will affect the facility's output of a specific pollutant for which the surrounding area is not in compliance with EPA limitations (*i.e.* a "non-attainment area").

Here, the area surrounding the Cemex plant is an "attainment area" for nitrogen oxide pollution, but a "non-attainment area" for particulate pollution. Because the Cemex plant emits both kinds of pollution, it would be required to obtain both a PSD and an NNSR permit before undergoing modifications. However, the particular details of how those two permits differ is not essential to the resolution of the instant issues. For purposes of this discussion, the Court will refer to "PSD permits" generally, intending that reference to encompass both types of pre-construction permits where appropriate.

### C. Cemex's motion

Cemex challenges the timeliness of the United States' first and second claims for relief. Distilled to their essence, these claims assert that Cemex "failed to apply for, obtain, and operate its Facility pursuant to a PSD permit and failed to apply for, obtain and operate its Facility pursuant to a proper Title V permit." Cemex contends that to the extent that monetary penalties are requested, these claims are barred by the Clean Air Act's five-year statute of limitations. 28 U.S.C. § 2462.

To the extent the United States contends that Cemex violated 42 U.S.C. § 7475(a)(1) ("No major emitting facility . . . may be constructed in any area to which this part applies unless a [PSD] permit has been issued for such proposed facility in accordance with this part setting forth emission limitations for such facility which conform to the requirements of this part") by engaging in construction without PSD permits, those claims would almost certainly be barred by the statute of limitations. *National Parks & Conservation Ass'n. v. Tennessee Valley Authority,* 503 F.3d 1316, 1322-23 (11th Cir. 2007) ("*TVA II*") *and cases cited therein* ("violations of preconstruction permitting requirements occur at the time of construction, not on a continuing basis"). Any violation of the preconstruction permitting requirements accrued no later than 1999, and thus became untimely by 2004, several years prior to the commencement of this case.

A fair reading of the United States' Amended Complaint and response brief would suggest that its theory is not that the permit-less construction is <u>itself</u> actionable at this late date. Rather, the United States' theory appears to be that the pre-construction permitting process is significant only because that process generates certain findings (*e.g.* what pollutant outputs would be using the best currently-available technological measures) that, in turn, become

incorporated into a post-construction Title V operating permit. In that sense, the un-permitted construction is actionable vicariously, through a proceeding challenging whether current operations comply with the terms of a Title V permit – a permit that itself should be premised on findings from the PSD stage.

Whether the United States can challenge current operations on the grounds that the Title V operational permit was not properly circumscribed due to the operator's failure to comply with pre-construction permitting requirements is a question upon which the courts have reached differing conclusions based on differing state regulatory schemes. *Compare National Parks Conservation Ass'n. v. Tennessee Valley Authority*, 480 F.3d 410, 412-13 (6th Cir. 2007) ("*TVA I*") (current operations could be challenged despite un-permitted construction a decade earlier, as Tennessee's regulatory scheme created ongoing obligations to obtain construction permit and to use best-available technology) *with TVA II*, *supra* (current operations could not be challenged despite prior un-permitted construction; Alabama's regulatory scheme did not contain same requirements as Tennessee's).

Ultimately, it may become necessary to delve into Colorado's regulatory scheme to determine whether it is more akin to Tennessee or Alabama (or whether it is *sui generis* and, if so, what effect that has on the question). However, at this stage of the litigation, that inquiry is unnecessary. The Court is required to take the United States' facts alleged in the Amended Complaint as true, and thus, the Court assumes that the United States can show that Cemex "failed to apply for, obtain, and operate its facility pursuant to a proper Title V permit."[3] *Docket*

---

[3] Cemex points out that, elsewhere in the Amended Complaint, the United States makes reference to the State of Colorado issuing Cemex a Title V permit. *Docket* # 16, ¶ 70. This allegation is made with regard to a different claim for relief, and can be construed as a pleading

# 16, ¶ 59, 66.  Taken in the light most favorable to the United States, this language suggests that Cemex is currently operating the plant with no Title V permit whatsoever, or that it received a permit but is operating the plant in violation of the terms of that permit.  Such operation would constitute ongoing, daily violations of 42 U.S.C. § 7661a(a), thus warranting the United States' first and second claims for relief regardless of the remaining issues.  Whether this is the reality of the facts[4] is not an issue that is appropriately resolved at the pleading stage.

Because on the face of the Complaint, the claims have been timely brought, the Court declines to address whether equitable relief is barred by the doctrine of laches.

---

in the alternative, permitted by Fed. R. Civ. P. 8(d)(2). In any event, even if the United States has made inconsistent factual averments in the Amended Complaint, Rule 12 does not entitle the Court to favor one version of the facts over the other.

[4]From the parties' briefing, the Court infers that the operative word in the cited portions of the Amended Complaint is not "apply," "obtain," or "operate," but rather, "proper."  That is, the United States may not dispute that Cemex is complying with the terms of a Title V permit issued by the State of Colorado, but it disputes whether that permit adequately contains all of the restrictions and limitations that it should.  Assuming that to be the case, the issue is nevertheless particularly ill-suited to resolution on a non-evidentiary basis via a Rule 12 motion.  What constitute the "proper" terms of the permit, compared to the permit that was issued, is among many questions that would require extensive factual development.

## **CONCLUSION**

For the foregoing reasons, Cemex's Motion to Dismiss **(# 19)** is **DENIED**.

Dated this 31st day of March, 2010

                                    **BY THE COURT:**

                                    Marcia S. Krieger
                                    United States District Judge