```
              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLORADO

Civil Action No. 09-cv-00019-MSK-MEH

USA,

     Plaintiff,

vs.

CEMEX, INC.,

     Defendant.
_____

                      REPORTER'S TRANSCRIPT
                     Hearing on Law and Motion
_____

     Proceedings before the HONORABLE MARCIA S. KRIEGER,
Judge, United States District Court for the District of
Colorado, commencing at 10:09 a.m., on the 27th day of June,
2012, in Courtroom A-901, United States Courthouse, Denver,
Colorado.
```

Proceeding Recorded by Mechanical Stenography, Transcription Produced via Computer by Janet M. Coppock, 901 19th Street, Room A-257, Denver, Colorado, 80294, (303) 893-2835

|    |                                                              |
|----|--------------------------------------------------------------|
| 1  | APPEARANCES                                                  |
| 2  | John N. Moscato, James D. Freeman and Linda S. Kato,         |
| 3  | U.S. Department of Justice, 999 18th Street, South Terrace,  |
| 4  | Suite #370 Denver, CO 80202;                                 |
| 5  | Leigh P. Rende, U.S. Department of Justice,                  |
| 6  | P.O. Box 7611, Environment & Natural Resources Division,     |
| 7  | Washington, DC 20044;                                        |
| 8  | Robert G. Klepp, Office of Civil Enforcement, U.S.           |
| 9  | EPA, 1200 Pennsylvania Avenue, NW, Washington, DC 20460,     |
| 10 | appearing for the Plaintiff.                                 |
| 11 | Chet M. Thompson and Richard E. Schwartz of                  |
| 12 | Crowell & Moring, LLP, 1001 Pennsylvania Avenue, N.W.,       |
| 13 | Washington, DC 20004;                                        |
| 14 | Derek A. Hahn, Crowell & Moring, LLP, 3 Park Plaza,          |
| 15 | 20th Floor, Irvine, CA 92614, appearing for the Defendant.   |
| 16 |                                                              |
| 17 | * * * * *                                                    |
| 18 | PROCEEDINGS                                                  |
| 19 | *THE COURT:* Court is convened in 09-cv-00019 which is       |
| 20 | encaptioned United States of America v. CEMEX, Inc.  The matter |
| 21 | is set down on the law and motion calendar in order to schedule |
| 22 | a hearing to determine whether the foundational requirements |
| 23 | for certain opinions to be proffered under Rule 702 is       |
| 24 | satisfactory.                                                |
| 25 | Could I have entries of appearance, please?                  |

1           *MR. MOSCATO:*  John Moscato for the United States of
2    America.
3           *THE COURT:*  Good morning and welcome.
4           *MR. FREEMAN:*  Jim Freeman also for the United States.
5           *MS. KATO:*  Linda Kato for the United States.
6           *THE COURT:*  Good morning and welcome to all of you.
7    We have people appearing by phone?
8           *MS. RENDE:*  Yes.  Leigh Rende with the United States
9    of America.
10          *THE COURT:*  Good morning and welcome.
11          *MR. KLEPP:*  Also, Your Honor, Robert Klepp from the
12   United States Environmental Protection Agency.
13          *MR. THOMPSON:*  Your Honor, on behalf of CEMEX, you
14   have Chet Thompson.
15          *MR. SCHWARTZ:*  On behalf of CEMEX, Richard Schwartz.
16          *MR. HAHN:*  On behalf of CEMEX, Derek Hahn.
17          *THE COURT:*  Have we gotten everybody?  It sounds like
18   it.
19          All right.  Those people on the phone, if you can't
20   hear at any point, please let me know.  I suppose we should all
21   be impressed we have five attorneys for the government here and
22   three attorneys for the defense.  I am not sure why we have so
23   many attorneys for a hearing that is simply to set an
24   evidentiary hearing under Rule 702, but welcome to all of you.
25          I have had an opportunity to look at your joint 702

1  motion and it reflects -- actually, you have two of them, one
2  under Docket No. 176 and one under Docket No. 177.  And both of
3  these motions are pretty broad.  They don't look real finely
4  tailored to me at all.  It looks to me like those parties who
5  are proffering opinions have selected opinions out of the
6  experts' reports without regard to what really is going to be
7  proffered at trial and whether the opinions are opinions that
8  can be expressed by the witnesses that are going to be called.
9  And I am going to point to a couple of these so that you can
10 see what I mean.
11         For example, looking at Docket No. 176, the first
12 opinion starts out:  It was reasonable for CEMEX to believe.  I
13 am not sure that corporations can believe because I am not sure
14 that corporations have consciousness or at least a singular
15 consciousness.  I am not sure that an expert opinion with
16 regard to a belief can be rendered by someone who is designated
17 here as an expert in cement plant operations.  And I am not
18 sure whether belief really is relevant to the claims that are
19 pending.
20         It may be that this is an issue, if it has to be
21 determined, that falls within the scope of the jury's
22 determination as compared to something on which an expert can
23 opine.  So reframing here what the opinion is that you will be
24 soliciting at trial will be helpful.  I am not going to ask you
25 to refile these motions, but I urge you to go through and look

1  at these opinions and figure out whether really these are
2  opinions that someone can proffer, that they are going to be
3  relevant and that they are worthy of being challenged on a
4  foundational basis.
5        Then I look at the objections and the objections are
6  essentially scattershot objections.  And while I understand
7  everybody wants to preserve the right to object to the
8  opinions, in the filing of these motions and in the hearing
9  that we are going to have you need to focus in on what really
10 the foundational objections are.  This is not discovery and
11 it's not an opportunity to cross-examine these witnesses.  It's
12 not a time to figure out at the hearing whether or not this is
13 going to be a persuasive witness because I am not concerned
14 about whether the witness is persuasive.
15       Experts can disagree and an expert opinion is not
16 going to be excluded simply because someone disagrees.  The
17 question that is posed with regard to expert opinions is
18 whether this person in formulating the opinion has relied upon
19 reliable principles or methodologies or experience, and the
20 comments on the Rule 702 address how experience plays into
21 this; what facts and data were evaluated and whether they were
22 reliable facts -- there was a reliable evaluation of the facts
23 and data.
24       And with regard to this, let me draw to your attention
25 the 10th Circuit's view on sufficiently reliable facts and

1  data.  It is not sufficiently reliable.  It is sufficient.
2  It's a quantitative measure, not a qualitative measure.  And
3  it's driven by what the methodology was that was used to
4  evaluate the information.  So if the methodology requires
5  consideration of A and B and C, and the witness who was going
6  to offer an opinion only looked at A and B, then there was not
7  sufficient information considered.  It's methodology driven and
8  it's quantitative.
9       If the methodology requires the consideration of a
10  hundred thousand incidents and the person rendering the opinion
11  only looked at 50,000, then you have a challenge as to whether
12  there was sufficient facts and data considered.  So
13  quantitative, not qualitative, and driven by the methodology
14  that was used.
15      Whether the expert reliably applied the principles and
16  methodologies to the facts and data obtained, some of these
17  opinions do not reflect consideration of particular facts and
18  data in this case.  They are general statements based upon
19  knowledge and information that's derived from the experts'
20  experience or training or expertise.  So the assertion of that
21  particular objection would not be applicable where there are
22  general statements being made.  Then what you are doing is you
23  are questioning the weight of the opinion and I am not going to
24  be determining weight.
25      So looking at these two motions, I think a lot can be

1  trimmed out.  A lot can be better focused.  What I will be
2  doing at the hearing that we will handle or that we will set
3  today is I will start by asking you which opinions really are
4  going to be proffered and which objections really need to be
5  pursued, so you don't have to file anything else, but be
6  prepared to address that.
7          Due to the breadth in what you have done here, I will
8  conduct the initial examination of all of these witnesses in my
9  gatekeeper capacity.  You will have an opportunity after I have
10 asked the fundamental questions based on the objections that
11 have been raised to ask additional questions.
12         You have indicated that you need several hearings.  I
13 believe you have overestimated the amount of time that you need
14 for evidentiary hearings and I believe that if I conduct the
15 initial examination, we will move through this more speedily.
16         We can set -- I think you can get all of this covered
17 with two days of an evidentiary hearing.  That will cover all
18 of the opinions.  And we can set this for October 16 and 17.
19 Does that work?
20         *MR. THOMPSON:*  That works for CEMEX.
21         *MR. MOSCATO:*  John Moscato for plaintiff, Your Honor.
22 That would work for some of our experts, but one expert is
23 unavailable until late October, Dr. Fox.
24         *THE COURT:*  Let me ask whether any of these opinions
25 are opinions that are premised upon other experts' opinions.

1  Do we have a hierarchy of opinions here, assumptions that are
2  made by experts based upon something they have reviewed that
3  another expert has addressed?
4      *MR. MOSCATO:* Your Honor, we have some of the
5  challenges that involve opinions expressed in rebuttals and
6  therefore would be contingent on --
7      *THE COURT:* I have no idea why there would be any
8  objection raised at this point with regard to rebuttal reports.
9  No reports are going to be admitted in a trial. The experts
10 testify.
11     *MR. MOSCATO:* Excuse me, Your Honor. May I speak?
12     *THE COURT:* Sure.
13     *MR. MOSCATO:* I understand that, but I have reason to
14 believe that, for instance, defendant's experts will offer
15 testimony that addresses plaintiff's experts and then
16 plaintiffs will have testimony responding to that.
17     *THE COURT:* All right. And let's think through that.
18 What you are really saying is the experts disagree.
19     *MR. MOSCATO:* Yes.
20     *THE COURT:* So the question here is whether the people
21 who are expressing the opinions have qualifications and a
22 methodology by which they can base a disagreement; and if they
23 do, then they can express opinions with regard to that.
24     The focus of the 702 determination is not upon whether
25 you disagree with what an expert says, and that's why

```
 1   challenging opinions with regard to rebuttal reports really is
 2   not in my experience a very useful exercise.
 3           MR. MOSCATO:  I understand, Your Honor.  So with that
 4   understanding, then no.
 5           THE COURT:  We don't have a hierarchy here.  That's
 6   where we were.
 7           MR. MOSCATO:  No.
 8           THE COURT:  So let me ask the attorneys for CEMEX
 9   whether you believe there is a hierarchy of opinions here.
10           MR. THOMPSON:  Not that are relevant to these
11   challenges, Your Honor.
12           THE COURT:  Okay.  So Dr. Fox could be scheduled for
13   another day; is that correct?
14           MR. THOMPSON:  Yes, Your Honor.  And I would like to
15   acknowledge because I apologize, I did speak with Mr. Moscato
16   before, and I should not have agreed to that October date.
17   Mr. Moscato did tell me that Dr. Fox was not available and I
18   misspoke, but yeah, she could be scheduled separately.
19           THE COURT:  No problem with that.  We will schedule
20   her for October 25th.  We will start all these hearings at
21   9:00 o'clock in the morning.
22           Is there anything, counsel, you need to know about the
23   hearings that I can answer or address?
24           MR. MOSCATO:  It might be helpful, and excuse me, I
25   don't have a lot of experience with these forms of hearings,
```

1    but when you indicate that the Court will conduct the initial
2    examination, will that be -- what will the scope of that be?
3          *THE COURT:* It will focus on the objections that are
4    raised. So for example, if you will turn to Docket No. 176,
5    opinion No. 1. The opinion states: It was reasonable for
6    CEMEX to believe that the 1997 combustion chamber project would
7    decrease NOx emissions. This project reduced the cross
8    sectional area of the calciner to increase turbulence for
9    better air-fuel mixing. Reducing the cross section and
10   increasing turbulence would cause the static pressure drop
11   across the calciner to increase. At a given ID fan power
12   consumption (ampload), this would reduce the volume of air,
13   da, da, da, da, da, da, da.
14         I would start out by saying -- by asking Mr. Young if
15   this was his opinion. Secondly, how did he formulate the
16   opinion. Third, what methodology did he use to reach the
17   opinion. Fourth, what facts and evidence did he rely upon in
18   using that methodology.
19         *MR. MOSCATO:* Thank you, Your Honor. I understand
20   where those four criteria come from, so things like the
21   qualification.
22         *THE COURT:* There is no objection as to his
23   qualifications.
24         *MR. MOSCATO:* Okay. Thank you.
25         *THE COURT:* So we focus only on the objections. And

1  that's why I urge you to think about this.  If you believe the
2  expert has the qualifications to express a particular opinion,
3  the next step is to figure out what principles, methodologies
4  or experience he or she used.  And if you don't have a problem
5  with that, then don't challenge it.
6       If you think the problem is that what was used to
7  render the opinion is not the result of a reliable principle or
8  methodology or there has been sufficient experience to base the
9  opinion, then challenge it.  If you believe that the problem
10 here with this opinion is that although the expert had
11 sufficient experience and used good principles and
12 methodologies, but the amount of facts and data considered
13 weren't enough, then you challenge whether or not there were
14 sufficient facts and data.
15      And if you think the problem is that although the
16 methodology or the principle that was used by the expert was
17 fine and the amount of facts and data were fine, but the
18 problem was that the witness didn't apply the methodology or
19 the principle in the way that it's usually and regularly
20 applied, then you challenge that, that the principles and
21 methodologies were not reliably applied to the facts and data.
22      Figure out what it is that is the problem with this
23 opinion.  If your conclusion is my expert simply disagrees,
24 that's not a foundational objection.
25           *MR. MOSCATO:*  Thank you, Your Honor.

1    *THE COURT:* Does that clarify what you need to do?
2    *MR. MOSCATO:* Yes.
3    *THE COURT:* Does it clarify what questions I am going
4    to be asking?
5    *MR. MOSCATO:* Yes, Your Honor.
6    *THE COURT:* Okay. It may be that some of these
7    witnesses you don't really need to challenge their opinions.
8    *MR. MOSCATO:* We will certainly examine that, Your
9    Honor.
10   *THE COURT:* And CEMEX, you need to as well.
11   Any questions on your end?
12   *MR. THOMPSON:* No, Your Honor.
13   *THE COURT:* I would urge you, if you haven't already,
14   to read the *United States v. Crabbe* opinion. That opinion, I
15   attempted to delve into the Rule 702 hierarchy, what opinions
16   are based on, whether they are based on essentially accepted
17   formula or equations by which experts formulate an opinion or
18   whether they are based on assumptions or whether they are based
19   on particular facts. For each of these opinions, counsel, you
20   will want to know that. You will want to know where this
21   opinion came from because that's what we are really testing.
22   And that's -- it's not -- it is not a broad scope process. It
23   is a finely tuned pincer-like process.
24   Witnesses will not be excluded. Opinions may lack
25   adequate foundation to be offered, so we are focused on

1 opinions, not people.

2 Is there any other question I can answer for you?

3 *MR. THOMPSON:* Judge Krieger, Chet Thompson. What 4 about the possibility of having an expert testify with respect 5 to the expertise of one of the challenged witnesses, would that 6 follow the same procedure upon which you would question that 7 person?

8 *THE COURT:* Let's go through that. Let's work through 9 that. You have someone who is offering an opinion as to 10 someone else's expertise. Now, I assume that that is someone 11 who is not themselves offering an opinion in this case; is that 12 right?

13 *MR. THOMPSON:* Yes, Your Honor, that's correct.

14 *THE COURT:* So this is a witness that you are going to 15 call just for purposes of challenging expertise.

16 *MR. THOMPSON:* That's correct.

17 *THE COURT:* Okay. With regard to that, if you want to 18 call that witness and examine that witness, that's fine. Does 19 that answer your question?

20 *MR. THOMPSON:* Yes, Your Honor. Thank you.

21 *THE COURT:* Please remember who has the burden of 22 proof with regard to these hearings. It's on the proponent of 23 the opinion. And please remember that we are going to be 24 limiting ourselves to the objections that are made. We are not 25 going to be inquiring into other things.

1  *MR. MOSCATO:* Understood, Your Honor.

2  *THE COURT:* Okay. You look like you have a question.

3  *MR. MOSCATO:* No, Your Honor. I know what I need to
4  know now going forward.

5  *THE COURT:* How about for CEMEX, any questions on your
6  end? I can't see you.

7  *MR. THOMPSON:* No questions on our end.

8  *THE COURT:* You can organize however you want to
9  organize the scheduling of these witnesses. Just let me know
10  in advance or let Ms. Glover know in advance who you are going
11  to be dealing with first.

12  *MR. THOMPSON:* Should we have all witnesses prepared
13  to go on --

14  *THE COURT:* That's up to you.

15  *MR. THOMPSON:* I withdraw that. I withdraw that.

16  *THE COURT:* You can schedule however you want to
17  schedule because you are going to be working around other
18  people's schedules, the experts' schedules. We will just
19  decide the time here in the courtroom to deal with that, but
20  this is all the time that I am going to allocate for the 702.

21  *MR. SCHWARTZ:* Your Honor, this is Rich Schwartz for
22  CEMEX. I assume that you would like to know the schedule so
23  that you can prepare to do the examination. And so the
24  question is how much notice do you need in order to do that?

25  *THE COURT:* Oh, I think that you can a week or so

1   before the hearing let Ms. Glover know.
2           *MR. MOSCATO:* By written submission, Your Honor?
3           *THE COURT:* No, you can call her up and tell her.
4           *MR. MOSCATO:* Thank you, Your Honor.
5           *THE COURT:* Anything else we can do today?
6           *MR. MOSCATO:* There is based upon the order that set
7   this hearing the matter of the pretrial date.
8           *THE COURT:* Well, I am not setting a pretrial date
9   until after the dispositive motions are ruled on.
10          *MR. MOSCATO:* That's fine.
11          *THE COURT:* I think that was an oversight in the
12  drafting of the order. It's a form order and it shouldn't have
13  been in there.
14          *MR. MOSCATO:* Okay, Your Honor.
15          Just one other matter to make -- well, one other
16  matter to make the Court aware of even though we are not going
17  to reach the pretrial issue, which is back in May of 2009,
18  Docket No. 33, the parties moved for bifurcation. On May 20th
19  of 2009, Docket No. 39, that order was granted in part, denied
20  in part. There the Court said it would consider the matter of
21  bifurcation if raised by the parties at a later time.
22          I simply wanted to inform the Court the parties are
23  considering that issue and will move in a timely manner should
24  they decide it is appropriate to recommend for your
25  consideration bifurcation of the proceedings.

| | |
|---|---|
| 1 | *THE COURT:* Does that bear upon the 702 determination? |
| 2 | *MR. MOSCATO:* No, Your Honor. I don't believe -- it |
| 3 | shouldn't. Mr. Thompson? |
| 4 | *MR. THOMPSON:* I don't think it bears. |
| 5 | *MR. MOSCATO:* That's all the United States has today, |
| 6 | Your Honor. |
| 7 | *THE COURT:* Thank you. Usually we deal with |
| 8 | bifurcation if you want to address that at the time of the |
| 9 | final pretrial conference, so we will be setting a final |
| 10 | pretrial conference after the dispositive motions are all ruled |
| 11 | on. You have one dispositive motion that I believe is still |
| 12 | outstanding. |
| 13 | *MR. MOSCATO:* Thank you, Your Honor. |
| 14 | *THE COURT:* Thank you. |
| 15 | *MR. THOMPSON:* Thank you, Your Honor. |
| 16 | *THE COURT:* Thank you. |
| 17 | *MR. SCHWARTZ:* Thank you. |
| 18 | *THE COURT:* I hope you all have a cooler day today and |
| 19 | perhaps a cooler summer. I will look forward to seeing you in |
| 20 | the fall. We will stand in recess. |
| 21 | (Recess at 10:34 a.m.) |

REPORTER'S CERTIFICATE

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter. Dated at Denver, Colorado, this 3rd day of July, 2012.

S/Janet M. Coppock